CITY OF CADILLAC v CADILLAC NEWS & VIDEO, INC

Docket No. 181914. Submitted June 18, 1996, at Grand Rapids. Decided February 21, 1997, at 9:10 A.M.

The City of Cadillac brought an action in the Wexford Circuit Court against Cadillac News & Video, Inc., and Richard Olsafsky, seeking to enjoin under the civil obscenity statute, MCL 600.2938; MSA 27A.2938, any further sale or distribution by the defendants of allegedly obscene materials after the Cadillac Police Department had obtained and executed a search warrant that authorized the seizure of one copy of every sexually explicit videotape, book, magazine, and other material at a store operated by Cadillac News & Video and Olsafsky. The court, Charles D. Corwin, J., denied the defendants' motion for suppression of evidence of the seized materials, but granted summary disposition in their favor after ruling that the preliminary injunction provisions of the civil obscenity statute constitute an impermissible prior restraint on expression under the First Amendment. The city appealed, and the defendants cross appealed the denial of their motion for suppression of evidence.

The Court of Appeals *held*:

1. The large-scale seizure of multiple copies of books, films, or other materials for the purpose of thwarting their distribution, before a judicial determination of their obscenity in an adversarial proceeding, is an unconstitutional prior restraint because it poses the danger of silencing protected speech as well as unprotected speech in abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books. If other copies of a seized item are not available to the exhibitor or distributor, a court should permit the seized material to be copied so that exhibition or distribution can be continued pending a judicial determination of the obscenity issue in an adversarial proceeding. Here, the portion of the civil obscenity statute that provides that a preliminary injunction or restraining order may be issued upon or at any time after the filing of a complaint is facially invalid as an unlawful prior restraint under the First Amendment inasmuch as it allows the removal of allegedly obscene materials from circulation before a trial on the obscenity issue and it does not allow for the copying of solitary materials.

2. The civil obscenity statute does not apply to videotapes offered for sale or distribution. The statute makes no mention of films, motion pictures, or videotapes. The Supreme Court, in *Kent Co Prosecutor v Robert Emmett Goodrich Corp*, 396 Mich 253 (1976), held that the civil obscenity statute is aimed at written or printed paper materials, not at motion pictures. The Legislature has not amended the civil obscenity statute to make it applicable to films, motion pictures, or videotapes although it has made the criminal obscenity statute, MCL 752.362(4); MSA 28.579(362)(4), expressly applicable to such media and to other media in a series of amendments of the criminal obscenity statute. It cannot be assumed that the Legislature intended the civil obscenity statute to apply to videotapes.

Affirmed.

1. OBSCENITY — CIVIL OBSCENITY STATUTE — PRELIMINARY INJUNCTIONS — CONSTITUTIONAL LAW — FIRST AMENDMENT.

The portion of the civil obscenity statute that provides that a preliminary injunction or restraining order against the acquisition, possession, sale, or distribution of allegedly obscene materials may be issued upon or at any time after the filing of a complaint for an action under the statute is invalid as an unlawful prior restraint on expression under the First Amendment inasmuch as it allows for the removal of allegedly obscene materials from circulation before a judicial determination of the issue of obscenity is made (US Const, Am I; MCL 600.2938[4]; MSA 27A.2938[4]).

2. OBSCENITY — CIVIL OBSCENITY STATUTE — VIDEOTAPES.

The civil obscenity statute does not apply to videotapes offered for sale or distribution (MCL 600.2938; MSA 27A.2938).

*Benson, McCurdy & Wotila* (by *Roger Wotila*), for the plaintiff.

*Rubin & Rubin* (by *Carl L. Rubin*), for the defendants.

Before: MACKENZIE, P.J., and MARKEY and J. M. BATZER*, JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MACKENZIE, P.J. On October 13, 1994, the Cadillac Police executed a search warrant authorizing the seizure of one copy of each sexually explicit magazine and videotape in the inventory of Cadillac News & Video, a retail establishment owned by defendant Richard Olsafsky. The search warrant had been issued on a finding of probable cause to believe that items in the store violated MCL 600.2938; MSA 27A.2938, the Michigan civil obscenity statute. As a result of the search, over one thousand items, or virtually the entire inventory of the store, were seized. On October 18, 1994, plaintiff city filed a complaint requesting a preliminary injunction to prevent defendants from distributing any other copies of the seized material pending a determination whether the material was legally obscene. The complaint also requested that, if the items were found obscene, the court order them destroyed and enter a permanent injunction prohibiting defendants from selling or acquiring any more such material. The trial court denied defendants' motion to suppress evidence of the seized items, but granted their motion for summary disposition and declined to enter an injunction. The city appeals as of right. Defendants cross appeal the denial of their motion to suppress. We affirm.

I

MCL 600.2938; MSA 27A.2938 provides in pertinent part:

> (1) The chief executive or legal office of any city, village or charter township or prosecuting attorney of the county may institute and maintain an action in the circuit court against any person, firm or corporation to enjoin and prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of any book,

magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose.

\* \* \*

(4) A preliminary injunction or restraining order may be issued upon or at any time after the filing of the complaint. The person, firm or corporation sought to be enjoined is entitled to a trial of the issues within 1 day after joinder of issue and a decision shall be rendered by the court within 2 days of the conclusion of the trial.

(5) If a final order or judgment of injunction is entered in favor of such officer of the city, village or charter township and against the person, firm or corporation sought to be enjoined, the final order or judgment shall contain a provision directing the person, firm or corporation to surrender to the sheriff of the county in which the action was brought any of the matter described in (1) and the sheriff shall be directed to seize and destroy the same.

In *Wayne Co Prosecutor v General Video of Michigan, Inc*, 203 Mich App 49, 53; 512 NW2d 36 (1993), this Court held that, prospectively from December 20, 1993, obscenity for the purpose of the statute will be determined by application of the standards set forth in *Miller v California*, 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

Like those statutes that criminalize the distribution of obscene materials, civil obscenity statutes are intended to be a deterrent:

In each case the bookseller is put on notice by the complaint that the sale of the publication charged with obscenity in the period before trial may subject him to penal con-

sequences. In the one case he may suffer fine and imprisonment for violation of the criminal statute, in the other, for disobedience of the temporary injunction. . . . [B]oth modes of procedure provide an effective deterrent against distribution prior to adjudication of the book's content—the threat of subsequent penalization. [*Kingsley Books, Inc v Brown*, 354 US 436, 443; 77 S Ct 1325; 1 L Ed 2d 1469 (1957).]

II

It is undisputed that once an item is determined to be obscene, the material is not protected under the First Amendment and may be regulated by the state. *Miller*, *supra*. At issue in this case is the civil obscenity statute's treatment of material *before* the material is judged to be obscene or not obscene, that is, whether the statute's authorization of a preliminary injunction against allegedly obscene materials is an unconstitutional prior restraint on protected speech. Although a similar question was raised in *Wayne Co Prosecutor*, *supra*, the panel did not resolve the issue.

Any system of prior restraints on expression bears a heavy presumption against its constitutional validity. *Bantam Books, Inc v Sullivan*, 372 US 58, 70; 83 S Ct 631; 9 L Ed 2d 584 (1963). Since *Freedman v Maryland*, 380 US 51; 85 S Ct 734; 13 L Ed 2d 649 (1965), the constitutionality of prior restraints on allegedly obscene expression has hinged on three conditions: (1) the burden must be on the state to prove that an item is obscene, and hence unprotected from regulation, (2) any restraint imposed by the state in advance of a final judicial determination that an item is obscene must be limited to the preservation of the status quo for the shortest fixed period compatible with sound judicial resolution on the merits, and (3) a prompt judicial determination of obscen-

ity must be assured. *Id.*, 380 US 58-59. See also *Southeastern Promotions, Ltd v Conrad*, 420 US 546, 560; 95 S Ct 1239; 43 L Ed 2d 448 (1975).

In *A Quantity of Copies of Books v Kansas*, 378 US 205; 84 S Ct 1723; 12 L Ed 2d 809 (1964), and *Marcus v Search Warrant*, 367 US 717; 81 S Ct 1708; 6 L Ed 2d 1127 (1961), the Supreme Court held that the large-scale seizure of multiple copies of books, films, or other materials for the sole purpose of thwarting their distribution, before a judicial determination of their obscenity in an adversarial proceeding, is an unconstitutional prior restraint because it poses the danger of silencing protected speech as well as unprotected speech in "abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." *A Quantity of Books, supra*, 378 US 213. Unlike the massive seizures in *A Quantity of Books, supra*, and *Marcus, supra*, *Heller v New York*, 413 US 483; 93 S Ct 2789; 37 L Ed 2d 745 (1973), involved the seizure of a single copy of a film being exhibited before the film had been determined to be obscene. The Supreme Court concluded that it is not an unlawful prior restraint to seize a single copy of a film, before a prompt judicial determination of obscenity, and to retain that copy for bona fide evidentiary purposes on the basis of a finding of probable cause to believe the material is obscene. However, until there was a "judicial determination of the obscenity issue in an adversary proceeding," exhibition of the film could not be restrained by seizing all available copies of it. *Heller, supra*, 413 US 492-493. See also *New York v PJ Video, Inc*, 475 US 868; 106 S Ct 1610; 89 L Ed 2d 871 (1986). The same is true for books or other expressive materials. *Fort Wayne*

*Books, Inc v Indiana,* 489 US 46, 63; 109 S Ct 916; 103 L Ed 2d 34 (1989). If other copies of the seized item are not available to the exhibitor or distributor, then the court should permit the seized material to be copied so that distributing or "showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the [material] must be returned." *Heller, supra,* 413 US 492-493.

In sum, because expression is presumptively protected by the First Amendment from regulation by the state, the state may not take an item it alleges to be obscene "out of circulation completely until there has been a [judicial] determination of obscenity after an adversary hearing." *Fort Wayne Books, supra,* 489 US 63. "Probable cause to believe that there are valid grounds for seizure is insufficient to interrupt the sale of presumptively protected books and films." *Id.,* 489 US 66.

III

Applying these principles to the Michigan civil obscenity statute, we conclude that the trial court did not err in finding that the part of MCL 600.2938(4); MSA 27A.2938(4) providing that, "[a] preliminary injunction or restraining order may be issued upon or at any time after the filing of the complaint," is facially invalid as an unlawful prior restraint under the First Amendment. The statute clearly allows the removal of allegedly obscene materials from circulation before a judicial determination whether the material is obscene, with none of the safeguards the United States Supreme Court has demanded. It does not prohibit the removal of all copies of an allegedly

obscene item from circulation before a trial on the obscenity issue. It does not allow the distributor whose only copy of an item has been seized an opportunity to request the return of the item after it has been copied. It does not assure the continued circulation of the allegedly obscene material until the obscenity issue has been finally decided after a trial. Instead, rather than avoiding the danger of "abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books," *A Quantity of Books*, *supra*, 378 US 213, the statute expressly allows such an abridgment.

The city argues that the trial court erred in focusing on the punitive nature of the statute when it declined to enter an injunction against defendants. The possibility of being held in contempt in the context of the civil obscenity statute was a legitimate concern, however. As stated in *Vance v Universal Amusement Co, Inc*, 445 US 308, 316; 100 S Ct 1156; 63 L Ed 2d 413 (1980):

> [The statute] authorizes prior restraint of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene. Presumably, an exhibitor would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene. Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any criminal prosecution.

The city also argues that the statute should be upheld under *Kingsley Books, supra*. We disagree. The city is correct that *Kingsley Books*, decided in 1957, upheld the state's power to prevent the circula-

tion of allegedly obscene materials during the period in which the issue of obscenity is tried and adjudicated. However, it is apparent that the Supreme Court has since abandoned that position in favor of the rule that a "publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing." *Fort Wayne Books, supra,* 489 US 63. Further, the *Kingsley Books* Court was clearly influenced by the fact that the statute allowed for a prompt judicial resolution of the obscenity issue. In this case, the sheer number of items seized would make a prompt resolution of the obscenity issue a virtual impossibility.

The seizure of a single book or copy of a film, pursuant to a warrant issued after a determination of probable cause by a neutral magistrate, followed by a prompt judicial determination of the obscenity issue in an adversarial proceeding, is constitutionally permissible. *Heller, supra.* What is impermissible is the complete removal of the publication or film from circulation until a judicial determination has been made that the material is legally obscene under *Miller. Fort Wayne Books, supra.* The temporary injunction provision of the civil obscenity statute runs contrary to these principles and is therefore unconstitutional under the First Amendment.

IV

The city also contends that the trial court erred in concluding that MCL 600.2938; MSA 27A.2938 does not apply to videotapes offered for sale or distribution. The starting point in every case involving construction of a statute is the statutory language itself. *House Speaker v State Administrative Bd,* 441 Mich

547, 567; 495 NW2d 539 (1993), quoting *Int'l Brotherhood of Teamsters v Daniel*, 439 US 551, 558; 99 S Ct 790; 58 L Ed 2d 808 (1979). In *Kent Co Prosecutor v Robert Emmett Goodrich Corp*, 396 Mich 253, 254-255; 240 NW2d 242 (1976), our Supreme Court examined the language of the civil obscenity statute and concluded that it "is aimed at the 'sale,' 'distribution,' 'acquisition or possession' of written or printed paper materials, not the exhibition of a motion picture film." In so deciding, the Court noted:

> Read in context ("book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter") the words picture, photograph, figure or image mean a picture, photograph, figure or image on paper—writing paper, book paper, magazine paper, photographic paper. [*Id.*, p 255.]

The *Kent Co Prosecutor* Court also found it helpful to compare the civil obscenity statute with Michigan's criminal obscenity statute, then MCL 750.343a; MSA 28.575(1), now MCL 752.362 *et seq.*; MSA 28.579(362) *et seq.* While the civil obscenity statute makes no mention of film or videotape, the criminal obscenity statute expressly applies to "any book, magazine, newspaper, pamphlet, picture, drawing, pictorial representation, motion picture, photograph, video tape, video disk, film, transparency, slide, audiotape, audiodisk, computer tape, or any other medium used to electronically produce or reproduce images on a screen." MCL 752.362(4); MSA 28.579(362)(4). This difference makes it apparent that the Legislature chose to limit the operative effect of the civil obscenity statute. *Kent Co Prosecutor, supra*, p 257. Furthermore, courts cannot assume that the Legislature inadvertently omitted from one statute the language that

it placed in another statute, and then, on the basis of that assumption, apply what is not there. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Thus, it cannot be assumed that the Legislature intended the civil obscenity statute to apply to videotapes as well as paper materials, but merely overlooked their inclusion in the civil statute.

The Legislature has found reason to amend or rewrite the criminal obscenity statute a total of five times—in 1961 (1961 PA 217), 1962 (1962 PA 64), 1964 (1964 PA 143), 1984 (1984 PA 343), and again in 1992 (1992 PA 216)—in part to address the development of new media. In contrast, and despite the issuance of the *Kent Co Prosecutor* decision, the Legislature has chosen not to amend the civil obscenity statute to include motion pictures, videotapes, or any other nonpaper media. We construe this legislative silence as an acquiescence to the Supreme Court's reading of the civil obscenity statute and as a determination that the statute should not be as broad in scope as the criminal statute. See *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989). The trial court did not err in ruling that the civil obscenity statute does not apply to videotapes offered for sale or distribution.

v

Our disposition of the above issues makes it unnecessary to address the issues raised by defendants in their cross appeal.

Affirmed. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.